Next case is the City of Danville v. The Workers' Compensation Commission, 4100139. Counsel, please. May I please report, Mr. Martin. My name is Nancy Shepard and I represent the defendant, Charles Bryant. This case has sort of a unique history. It was denied by the arbitrator, reversed on appeal to the commission, and then reversed again on appeal to the circuit court. The issue in this case is whether the claimant has a compensable accident that arose out of and in the course of his employment with the City of Danville. The standard of review for that question is, this is a question of fact. Therefore, the standard of review is, was the commission's decision against the manifest weight of the evidence? i.e., is there supporting evidence to affirm the commission's decision? The only way that decision can be overturned is if the opposite conclusion is clearly apparent, and whether there is sufficient evidence to support the finding. The circuit court improperly relied on the fact that the arbitrator is in a better position to assess credibility. He found the commission could not make a determination of credibility based on the reading of a cold record. This idea or basis has been rejected by the Supreme Court and the appellate court numerous times. In Franklin v. The Industrial Commission, they found the commission exercises original not appellate jurisdiction, and they are not bound by the arbitrator's finding. The Supreme Court in Kirkwood v. The Industrial Commission found that it is the province of the commission to assess credibility of witnesses, resolve conflicts in the evidence, and assign weight of the evidence. This court itself, just recently in 2010 in Hossamine v. The Illinois Workers' Compensation Commission, affirmed those decisions and found the commission, not the arbitrator, is the assessor of credibility. The commission's finding was that the defendant was credible, and that any inconsistencies were minor, not enough to infuse credibility, and not enough to deny compensation. This is clearly supported by the record. I'm not going to go into detail about all the specific facts and everything there. You have the briefs and the transcripts in front of you. However, I would like to address the fact that there is really only one history of accident given at any point in time. That the claimant injured his knee on a garbage truck when it stopped suddenly, and causing him to strike his knee on the metal of the garbage truck. That's the only history of accident that's located anywhere within these records. It's located in the accident report. It's located in the records of Dr. Mark Austin. It's located in the records of Dr. Allison Jones. And it's located in the records of Dr. Paul Platner, the claimant's treating orthopedic surgeon. It was given in testimony by the claimant at arbitration. Who witnessed the accident? No one actually saw him hit his knee. There were other people in the truck, but at the time he felt that when he struck his knee that the pain would eventually subside. He continued about his job duties. So no one actually witnessed him strike his knee against the garbage truck. The plaintiff's own witnesses actually confirmed the defendant's claim of accident. They testified that that is how he told them he injured his knee. Therefore, there is no evidence of any other accident. There's no evidence of any accident that occurred previously. There's no history of any accident that occurred after. There's no evidence that he injured his knee in any other manner other than the one that is provided in the records. Assuming you just passed that threshold question, the accident was in the course of and arising out of the claimant's work, how do you respond to the respondent's argument that they're making, I believe, that there's no specific medical opinion that correlates the condition of the claimant's right knee with the accident? How do you respond to that? Specific medical opinion is not necessary to find causation. If there is a history of good health, followed by an accident, followed by the need for treatment, then the commission is properly within its bounds to find that a causal connection occurs. That is the case here. There is no evidence of any prior knee injury of my client. There is no evidence of anything wrong with his knee at any time. As a matter of fact, in June of 2007, he had a pre-employment physical in order to begin work for the City of Danville, and no evidence of any knee problems was found. That was less than a month prior to his alleged date of accident. Once you find that he had an alleged date of accident, he immediately sought treatment and had to have surgery for a torn meniscus in his knee. Therefore, I think it's well within the bounds of the commission to determine that there had been causal connection and that that is not against the manifest weight of the evidence to find that. Therefore, I believe when reviewing the record as a whole, there is clearly sufficient evidence to support the finding of the commission. Therefore, their decision was not against the manifest weight of the evidence, and the Circuit Court erred in reversing the decision of the commission because they improperly relied on the arbitrator's finding of credibility, when it is the commission that is the one to determine the credibility and weight of evidence. Thank you, Counsel. Counsel, please. Thank you. Please, the Court. Good morning, Counsel. I'm Jack Martin. I represent the City of Danville in this matter. The issue is whether the Circuit Court was correct in holding the commission's award was contrary to that of the manifest weight of the evidence. I think this is a classic case where the plaintiff failed to prove their case, and there is absolutely, it's clearly apparent they did not prove their claim by the evidence that they presented. The commission's ruling was a two-to-one decision, so we have two commissioners saying they awarded the case and one saying not to. The arbitrator denied the case, and Judge Skowronski denied the case. The arbitrator was the only person to see the people testify, and it does turn on credibility. There's no question about that. The credibility of the petitioner, the credibility of my witnesses, the superintendent of the solid waste, as well as our Gene Smiley, our risk manager. She makes a good response to that. I mean, this isn't like the Circuit Court hearing, say, a criminal trial. The law is well settled if you acknowledge it. It's the commission's credibility findings, albeit a cold record or not, that we review, not the arbitrator's. I agree. I think you can't ignore the arbitrator's involvement in the case, nor Judge Skowronski's review of the cold record itself on the Manifest Waste Act. We don't review his decision. We review the commission's decision. We'll affirm or reverse the decision, but we don't review it. Unless he made some form of error procedurally, we review the commission's decision. So your opponent poses the question correctly. Is the commission's decision against the man who testified to the evidence? I suppose the question is why. He testified that he had an accident, didn't he? He testified. Why is he unbelievable? Well, he told various stories about when this accident happened to start with. He told his boss that it happened several weeks earlier. He talked to him on July 17th. Now, he does not remember when he talked to his boss, but that was his testimony. And Carl Carpenter testified. He said he hurt himself several weeks earlier. He was put up just a couple of days, supposedly, after he started work for us. That same day, he talked to Jeanne Smiley, whose job it is to keep track of injuries and insurance and so forth, and she testified that he told her he hurt himself a couple days after he came to work. Now, so that's an inconsistency, which doesn't make sense. He also said that he was on the Truck 62, and he identified two co-workers he was working with that day, supposedly. And yet the records would show that he was on Truck 61 with two other people that day. And, in fact, the records we introduced show that in the four days around this time period, he never worked with those other two people, and he never worked on Truck 62. He testified that 80 percent of the time he thought he worked on Truck 62, and I suggest that's why he maybe picked that truck, because he thought he often worked there. He filled out a form on July 17th that said it was raining. He said, what caused the accident? He said, rain. We introduced the weather reports, which show no rain on that day, and no rain the prior day. Now, the Commission got that wrong in their decision, because they said in their decision that the records showed 2.31 inches of rain that day. They misread the record. The record that we introduced, which responds to the four, has a top part and a bottom part. The top part shows precipitation and weather for that day, July 6th, and has zero precipitation. And down below it says statistics for the rest of the month, and it's 2.31. That's what the Commission looked at, I guess, when they repeated that in their decision. That's page number two. So another inconsistency, no rain. But supposedly it was rain and it was slick, and that's what caused his accident. He put on that report that he gave us. So I think he simply had a hard time keeping the story straight. Now, these inconsistencies were pointed out to the Commission, were they not? Yes, they described them as some inconsistencies, discrepancies, honest mistakes, and so forth. I think they bent over backwards to try to ignore them, frankly. Well, let's assume they did, though. But you can understand they're not necessarily a problem. But our issue is that the law is very well settled. As you know, the case law is within the province solely of the Commission to weigh the credibility of the witnesses and the weight to be given to the testimony. How do you get around that? Because his testimony is so unbelievable on this evidence that it meets the manifest weight standard. When you consider the evidence that we offer, which totally contradicts what he tried to say, he told two of our people he got hurt on a certain date, and then he claims now he got hurt after the 4th of July. He told the doctor that he worked for Allied Waste. Is he required to know the exact date of the injury? I think it's the burdens on the petitioner to prove his case, and that includes proving a date of accident. I think the answer to that is yes. There's other evidence in the record that he had the right date, is there not? In medical records, isn't there other evidence that would indicate he had the right date? Well, when he goes to the doctor, he repeats his story. It's still just from him. There's nobody else corroborating it except him over and over when he goes for medical treatment. Of course, as I say, he couldn't keep it straight who he was working for either. He told the doctor he worked for Allied Waste. Well, he never worked for Allied Waste, so there has to be a transcription error, doesn't it? Not necessarily. I don't know what he thought. I don't know if he worked for Allied Waste previously or not, frankly. He may have. There is no medical opinion on causation. The commission says, okay, they brought that up in their ruling, so we'll infer that there's a connection. I think that's another weakness in the case. I think that Judge Skowronski and Arbitrator White and Commissioner Lamborn got it right, and that based on this evidence, it's clearly apparent he did not prove his claim. Any other questions? Thank you, guys. Thank you very much. Rebuttal. Just very briefly, and to address the inconsistencies that he mentioned, the first is the truck number and who the petitioner worked for. None of these things are relevant to the finding of whether there was an accident or not. The commission found that these were harmless inconsistencies, and I think that that's supported in the records. His witnesses didn't have an independent recollection of which truck Mr. Bryant worked on. They only knew based on their forms, and he very well could have been working on Truck 61. I don't think it matters which truck he was on. I think what matters is that he was on a garbage truck that day, and the truck stopped, and he slammed his knee against the truck. I think this is a minor detail that does not have any weight in whether my client injured his knee on that day or not. The second is the date of accident. They testified that he used the phrase several weeks earlier or three weeks earlier, and he then, on that same day that he spoke to their witnesses saying several weeks, filled out an accident report where he put a specific date of July 6, 2007, and that has been the date he stated the accident occurred on ever since. It was approximately a week and a half prior to filling out the accident report. I think when a person says it happened a couple of weeks ago or several weeks ago, they could easily have meant a week and a half, a week and a half earlier. He did put a specific date, and he's been consistent with that date ever since the day he provided it. In regards to rain and whether it was raining, he testified that it was a misty, dewy type of rain, and that's what he was referring to, and I think the medical records of the respondent clearly indicate that it could have been a misty, dewy, rainy, wet morning. The humidity was very, very high. The temperatures were very, very high. Did the weather report allude to that as well? The weather report indicated that the humidity was at 90% at around 550 and didn't get below 80 until after approximately 8 o'clock, I believe. I don't have them in front of me. So that would be supportive of the claimant's testimony. It wasn't kind of debunked. And that is exactly what the commission found in their conclusions of fact. They did misstate the rain, that there was 2.31 inches that day, but in their actual findings, they found that it was humid and muggy, and that would corroborate what the claimant testified to. Thank you, counsel. The court will take the matter under advisory for disposition.